UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LOU ANNA BRYANT** | : | **DOCKET NO. 06 CV 1006** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **LINDA S. MCMAHON, ACTION COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | : | **MAGISTRATE JUDGE WILSON** |

**REPORT AND RECOMMENDATION**

Presently before the court is plaintiff's petition for judicial review of the defendant's denial of social security benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find that the Secretary's decision is not supported by substantial evidence in the record and is not consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

**BACKGROUND**

Lou Anna Bryant filed the instant application for Supplemental Security Income payments alleging disability due to diabetes, anemia, headaches, vision problems and limited use of extremities. (Tr. 36-38, 52 ). The claims were denied at the initial stage of the administrative process. Thereafter, Bryant requested, and received a December 13, 2005, hearing before an ALJ. (Tr. 208). However, in a January 25, 2006, written decision, the ALJ determined that Bryant was not disabled under the Act, finding at Step Five of the sequential evaluation process

that she retained the ability to perform a full range of medium work, and that Rule 203.18 of the Medical Vocational Guidelines directs a finding of not disabled. (Tr. 17). Byant appealed the adverse decision to the Appeals Council. Yet, on May 25, 2006, the Appeals Council denied Bryant's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th

Cir. 1994).

## LAW AND ANALYSIS

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that she cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

Plaintiff filed this action seeking judicial review of the denial of benefits. She essentially claims the following errors:

(1) The ALJ's RFC evaluation was not supported by substantial evidence;

(2) The ALJ erred in concluding that Plaintiff did not meet listings §§ 12.05B and/or 12.05C and/or 12.05D;

(3) The ALJ erred in evaluating the severity of Plaintiff's impairments.

The ALJ found that Plaintiff suffers from servere impairment of diabetes, hypertension,

esophageal hernia, and obesity. He also concluded that Plaintiff could perform a full range of medium work. (Tr. 17). The Medical Vocational Guidelines direct a finding of not disabled if Plaintiff has the RFC to perform a full range of medium work.

Ultimately, the validity of the ALJ's findings depend on the validity of his determination that Plaintiff suffered from no mental impairment that significantly impaired Plaintiff's ability to perform a full range of medium work. Plaintiff was referred to Dr. Alfred Buxton for a psychological evaluation. Dr. Buxton reported, in part:

> It was quite clear that valid intellectual data was not going to be obtainable by this individual as she was presenting in a bogus or otherwise fake bad fashion, Examples of her bogus responses is when asked if one cut an apple in half how many pieces would there be and she says one; a mouse is larger than a cat; she reported she could not count from 1 to 5; she did not know the alphabet; she referred to a pen as a pencil; and watch as a bracelet. She denied knowing whether the moon shined during the day or night or whether the sun shined during the day or night. It was quite clear that she was attempting to present herself as being much more dysfunctional than is actually the case. In an effort to see how far she would take this the examiner also administered the Stanford-Binet Intelligence Scale, Form L-M. In fact she only passed one item and this was at the 2 year level and this was word combinations and this was only because she was speaking to the examiner. She failed everything else quite miserably and seemed to do so as an act of deliberation. In fact, many of her responses suggested cognitive functioning somewhat higher than what she is willing to demonstrate on examination. The examiner was of the opinion that she functions greater than or equal to the borderline range of subaverage general intellect with commensurate adaptive daily living skill development. (Tr. 73)

Notably Plaintiff had mentioned no significant mental or cognitive problems in her disability report. (Tr. 51-60). She had completed the 9th grade, could write more than her name in English, and could read English. She did indicate that she "has trouble reading, & spelling." (Tr. 59). She denied attending special education classes. (Tr. 58). However, when she went to see Dr. Brinkley for a medical evaluation she reported that she had attended special education

4

classes. (Tr. 75). Dr. Thomas Fain reviewed the record evidence and concluded that there was "no evidence of mental disorder in the record, and the claimant has attempted to malinger dysfunction." (Tr. 98). This information led the ALJ to conclude that Plaintiff was not credible, and that Plaintiff had not adequately established a mental impairment. (Tr. 13).

Approximately nine months after Dr. Buxton's examination Bryant was referred by her attorney to Dr. Naomi Friedberg for a psychological evaluation. Dr. Friedberg administered the WAIS-III and concluded that Plaintiff's verbal IQ was 67, her Performance IQ was 56 and her Full Scale IQ was 59. She also diagnosed Dysthymic Disorder, with superimposed Major Depressive Episodes, Moderate to Severe, with possible psychotic features. (Tr. 102-106). If her assessment was accurate it would clearly be inconsistent with an ability to perform a full range of medium work.

The ALJ is entitled to determine the credibility of medical experts and to weigh their conflicting opinions and testimony. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Marinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ is required to evaluate every medical opinion in the record. 20 CFR § 416.927(d). Here the ALJ made absolutely no mention of the report of Dr. Friedberg. Plaintiff contends that the ALJ was required to specifically explain why the Dr. Friedberg's opinions were rejected. As authority Plaintiff cites *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000). However, *Loza* involved the ALJ's failure to explain his failure to give "considerable weight" to the <u>treating doctors'</u> medical

evidence.[1] Dr. Friedberg was not a treating doctor.

20 CFR § 416.926(f)(2)(ii) provides in part:

> . . . <u>the administrative law judge must explain</u> in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, <u>as the administrative law judge must do for any opinions from treating sources, nontreating sources</u> . . . . (Emphasis added).

This indicates that the ALJ was required to explain that weight given to Dr. Friedberg's opinions. This conclusion is further supported by Social Security Ruling 96-5p. It provides, in part:

> Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.

Thus, while the ALJ may have been free to give no weight to Dr. Friedberg's opinions in view of the serious questions regarding Plaintiff's credibility the ALJ was required to explain that in his decision. By not mentioning Dr. Friedberg's opinions it is impossible to tell if the ALJ considered her opinions as he was required to do. The ALJ has failed to comply with applicable legal standards.[2]

Accordingly, it is

IT IS RECOMMENDED that this matter be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this opinion.

---

[1] Plaintiff also cites the cases cited in Loza, *Strickland v. Harris*, 615 F.2d 1103 (5th Cir. 1980) and *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979). These cases held that an ALJ may not arbitrarily reject uncontroverted medical testimony. Thus, they are not directly on point.

[2] This conclusion makes it unnecessary to specifically address Plaintiff's other alleged errors.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of May, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE